CAROLINE E. PLUMMER et al.

*vs.*

JOHN G. MOLD.

In an action in which the complaint alleges an agreed price for doing certain work, and the answer denies the agreed price, and alleges that defendant was to pay what the work should be reasonably worth, the plaintiff having given evidence tending to prove the agreement for a fixed price, the defendant may rebut such evidence, even though his rebutting evidence may tend to prove an agreement for a less price than that alleged in the complaint.

That part of *Sec.* 23, *of Chap.* 32, *of the Gen. Stat.*, which reads as follows: "Any logs or timber cut in this state or coming into this state, in the first district at any point on the Lake St. Croix above the city of Stillwater, the marks of which are not recorded in the district in which they were cut or into which they may come, and all logs or timber not bearing any distinctive mark shall not, in favor of the person who has cut the same or claims to be the owner thereof, be recognized, deemed, or held in any of the courts of this state to be the property of any such person, for any purpose whatever, in any action or proceeding," does not apply to logs which are on the land and in the actual possession of the owner.

This action was brought in the district court for Chisago county, was tried therein, and resulted in a verdict for the plaintiffs. The defendant made a motion for a new trial, which was denied, and he appeals to this court.

The nature of the action, and the exceptions taken to the rulings of the court upon the trial, are sufficiently stated in the opinion of the court.

L. R. CORNMAN for Appellant.

H. N. Setzer and Smith & Gilman for Respondents.

*By the Court*—Gilfillan, Ch. J.—This action was brought to recover for sawing logs into lumber, upon an alleged contract by which defendant was to pay therefor at the rate of seven dollars per thousand feet. The answer denies the contract price, alleges that the sawing was to be done for a reasonable price, that the lumber was to be properly sawed and manufactured, and made suitable and fit to be used for building, mechanical and manufacturing purposes, and alleges as a defense a breach by plaintiffs, of the contract, in respect to the manner in which it was to be manufactured. The same facts are then set up by way of counter claim.

To establish the contract plaintiffs proved certain conversations between defendant and Chapman, one of the plaintiffs. On the defense the defendant was sworn, and after relating, in part, two conversations on the subject had with Chapman, was interrupted by an objection made by plaintiffs that they were immaterial and inadmissible under the pleadings. The defendant thereupon stated to the court that the evidence was offered to disprove the contract set up in the complaint. The objections were sustained. From the parts of the conversations related by defendant, it can be inferred that his statement of the whole might tend to prove a contract for a fixed price less than that alleged in the complaint, and the court below seem to have excluded them for that reason, and because no contract for a fixed less price is alleged by defendant. To exclude them was error. The defendant had the right to give his version of the conversations on which plaintiffs relied to prove the contract alleged in the complaint, and to prove anything else which would disprove that contract. The court by its instructions

to the jury could guard against the defendant getting through this testimony, the advantage of any defense not pleaded. So far as it bore on the issues he was entitled to it. The defendant, to establish his counter claim, gave some evidence going to prove that he delivered to the plaintiffs, at their mill yard, a large number of logs to be sawed, and was going on with such evidence, when plaintiffs objected to all evidence in regard to the ownership of these logs, on the ground that the log-mark upon them had not been recorded in the surveyor general's office at Stillwater, and moved to strike out all the evidence in relation thereto. The court sustained the objection and struck out the evidence. To sustain this ruling, it is contended that under *section* 23, *chapter* 32, *of the General Statutes*, the only evidence of ownership of logs cut within this state is the recorded log-mark.

The section provides, first, for recording log-marks, and that being recorded, the log-mark shall be deemed and held to be the property of the person in whose name it is recorded, and that such mark borne upon any logs or timber and not superceded by any other mark, shall be *prima facie* evidence that the logs or timber bearing such mark are the property of the person owning the mark. The section then provides, that "any logs or timber cut in this state or coming into this state in the first district at any point on the Lake St. Croix above the city of Stillwater, the marks of which are not recorded in the district in which they were cut or into which they may come, and all logs or timber not bearing any distinctive mark shall not, in favor of the person who has cut the same or claims to be the owner thereof, be recognized, deemed, or held in any of the courts of this state to be the property of any such person, for any purpose whatever, in any action or proceeding." The plaintiffs in-

Plummer et al. v. Mold.

sist that under this provision, if logs are cut within this state and no distinctive marks are placed on them, or if the marks on them are not recorded, no proof whatever of ownership can in any case be received.

This language standing alone is capable of this interpretation, but the consequences of so interpreting it would be extraordinary. It would remove this kind of property entirely beyond the protection of law. No rights could be predicated on it. Whatever circumstances of fraud, violence or theft there might be, if a remedy required the recognition of the logs as property, then there would be no remedy, except what physical strength might afford. Unless the language absolutely require it, we can hardly believe that the legislature intended such consequences.

To ascertain what is intended by this part of the section, it will be necessary to consider the general purpose of the chapter in which it occurs, and the mischief aimed at. The business of cutting logs and floating or driving them down the streams in the state to market, is one of the large and important interests of the state. To regulate this business, and protect those engaged in it, is the manifest object of the chapter. It declares all rivers within the state, of sufficient size for floating or driving logs, and which may be used for that purpose, public highways for the passage of logs; regulates the erection of dams and booms on such rivers so as not to hinder the free passage of logs; establishes seven lumber districts, each composed of certain lakes or rivers, and the tributaries, the whole, however, not comprising all the territory in the state; provides for a surveyor general for each district and where he shall keep his office; prescribes his duties and fees; what books he shall keep; what shall be recorded and the effect of such books and records, and of the certificate of the surveyor general as evidence; protects

by penalties logs in said rivers or tributaries, or in any sloughs, ravines, or on any island or land adjoining said rivers or tributaries into or upon which any logs may run ; the whole clearly relating, unless the part of section 23 above quoted has a larger application, to the business of floating or driving logs, timber or lumber on the rivers so declared to be public highways for that purpose and comprised within the districts so established.

*Prima facie* the part of section 23 quoted, relates to the general object of the chapter. A careful examination of its language makes this certain. The log mark is to be recorded in the district in which the logs are cut, or into which they may come; but there is a large portion of the state not included in any lumber district, and where it would be impossible to record log marks as prescribed. The language is not to be held as applicable to such portions of the state. If such language applies only to the portions of the state included within these districts, it necessarily follows that it should be construed with reference to the purposes for which these districts are established, to wit, regulating the business of floating or driving logs and lumber on the rivers or lakes within those districts. No allusion is made in the chapter to logs on the land, except, evidently, to provide for a case where they are intended to be floated or driven on the rivers, or where they have run upon the land from such rivers. It provides no special protection to them until they are floated ; till that time they are left to the protection of the general rules of law. The precise cases in this business which the language quoted aims to guard against, are not so apparent.

The log mark is for the purpose of identification. It is evident that some such mode of identifying the logs of different owners is necessary where the logs of all owners

are thrown into the streams and float down intermingled. There is no such necessity where they are still on the land and can be identified by possession.

We are satisfied that the provisions of the part of section 23 which we have quoted, do not apply to logs which are on land, and in the actual possession of the owner, and thus clearly not within the mischiefs which the statute intends to provide against. In this case the logs were delivered by defendant to plaintiffs for the purpose of being sawed. The injustice of permitting plaintiffs to receive them from him, and then deny his right to them, would be a striking commentary on the interpretation of the statute contended for.

The order denying the motion for a new trial is reversed and a new trial ordered.